[No. 2027. Decided March 18, 1896.]

TACOMA GAS AND ELECTRIC LIGHT COMPANY, *Respondent*, v. THE CITY OF TACOMA, *Appellant*.

MUNICIPAL CORPORATIONS — POWER TO REGULATE PRICE OF LIGHT.

A delegation of powers will not be presumed in favor of a municipal corporation, but must be clearly conferred by express statutory enactment, unless they be such as are necessary to its corporate existence.

The provision in the charter of a city of the first class authorizing the enactment of ordinances fixing the price of gas to be furnished to the city and its inhabitants is of no force or effect, when the only power granted the city in that respect is contained in Laws 1889-90, p. 215, § 5, subd. 15, authorizing such cities to provide for lighting the streets and furnishing the inhabitants with gas or other light, " and to regulate and control the use thereof."

A city cannot adopt a charter empowering it to fix the price of gas to be furnished its inhabitants, under a constitutional provision (art. 11, § 10) authorizing cities of a specified population to frame charters for their own government, consistent with and subject to the constitution and laws, where a general law authorizes such cities to regulate and control the use of gas, but contains no provision as to price.

Appeal from Superior Court, Pierce County.—Hon. W. H. PRITCHARD, Judge. Affirmed.

*James Wickersham*, and *Stacy W. Gibbs*, for appellant.

*Stiles, Stevens & Tillinghast*, for respondent.

The opinion of the court was delivered by

SCOTT, J.—This action was brought by plaintiff to restrain, the city of Tacoma from enforcing an ordinance regulating the charge for gas furnished its citizens. The complaint in substance alleged the incorporation of plaintiff in the State of Washington, the corporate existence of the city under the laws of the Territory of Washington and its subsequent adoption of a freeholders' charter under the constitution. The grant by ordinance in 1884 to John W. Sprague, his associates and assigns of the right and privilege to supply the city of Tacoma and its inhabitants with light by gas, electricity or other means, and to lay pipes in the streets for this purpose. The acceptance of the franchise by Sprague, and building of said works and laying of pipes and furnishing of gas to the inhabitants of Tacoma by the Tacoma Light and Water Co., the assignee of Sprague. The assignment of the franchise by the Light and Water Company to plaintiff. That the rates now charged are reasonable. That in violation of plaintiff's rights the city enacted an ordinance on June 25, 1895, fixing maximum rates for gas at $1.50 per thousand cubic feet for lighting, and $1.25 for heating. That plaintiff is the only person or corporation engaged in supplying gas in the city of Tacoma. That the rates fixed by the ordinance are not reasonable and that the ordinance is *ultra vires* and void. That many suits will be brought against its employees for a violation of the ordinance, to the great damage of plaintiff, and cause irreparable injury. Wherefore, the plaintiff prayed for an injunc-

tion restraining the city from enforcing the ordinance against the plaintiff, its agents or servants during the life of its franchise.

Upon a hearing after notice given the court enjoined the enforcement of the ordinance pending the final disposition of the case, and the city has appealed therefrom. A preliminary question is raised over the refusal of the court to permit the defendant to read certain affidavits upon the hearing. We do not regard this as material, it appearing that the application was made and the injunction granted solely upon the ground that under the facts stated in the complaint the city had no power to enact or enforce an ordinance against the plaintiff's fixing rates. The question of the unreasonableness of the rates being waived for the purposes of that hearing, we shall confine our attention to the question of power. It is contended by respondent that under the franchise the city surrendered whatever rights it may have had to fix the rates, to Sprague and his assignees, and only imposed the condition that the rates should be reasonable. The section of the ordinance in question is as follows:

"Sec. 1. That John W. Sprague, his associates and' assigns are hereby granted the right and privilege to construct and maintain within the corporate limits of the city of Tacoma, works as may be necessary or convenient for the manufacture, production, generation and supply to the said city and its inhabitants of light by gas, electricity or other means, for which he or they are hereby authorized and empowered to charge the consumer reasonable rates."

The respondent's contentions are based upon two grounds. One is that the grant was in the nature of a contract and, the company having fixed the rate at $2.00, the city could not decide that it was unreasonable and fix a lower rate. It is conceded that the state

by a general law could regulate such charges unless
the license took the form of a contract waiving the
right.    It is also conceded that the state could by ex-
press enactment delegate such power to municipalities.
It is not contended that the state has fixed the rate
and the respondent contends that it has not delegated
the power to do so, and it is to this question that we
shall direct our attention.    It is a well settled rule of
construction that a delegation of powers will not be
presumed in favor of a municipal corporation unless
they be such as are necessary to its corporate existence,
but that the same must be clearly conferred by ex-
press statutory enactment.    *Minturn v. Larue,* 23 How.
435; *Pennsylvania R. R. Co. v. Canal Coms.,* 21 Pa. St.
9–22; Dillon's Municipal Cor., (4th Ed.), § 91; *Louis-
ville Natural Gas Co. v. State,* 135 Ind. 49 (34 N. E.
704); *City of St. Louis v. Bell Telephone Co.,* 96 Mo. 623
(10 S. W. 197).

The ordinance containing § 1 aforesaid granting the
right was passed in 1884, under the special charter of
the city enacted in 1883, wherein there was no dele-
gation of power to do anything but license the laying
of gas pipes and the furnishing of gas.    In 1886 the
special charter of that year (Laws, p. 202) did confer
the general power to fix rates for gas upon the city of
Tacoma, but it expressly prohibited the exercise of
the power as to persons or corporations then furnish-
ing gas further than the ordinance granting the
privilege did so.    But the dependence of the city is
based upon certain provisions of its freeholders'
charter of 1890, which are as follows in substance :

" The city shall have power to fix the price of water
and light furnished to inhabitants of the city by any
person or corporation other than the city, and to
regulate the supply and use thereof, whether by per-

sons or corporations now holding franchises or here-after obtaining franchises."

" To provide for erecting, purchasing, appropriating or otherwise acquiring water works, gas works or electric light plants within or without the corporate limits of said city, to supply said city and its inhabi-tants with water and light, or to authorize the con-struction of same by others, and to regulate and con-trol the use and price of the water or light so supplied."

" To provide for lighting the streets and all public places, and for furnishing the inhabitants of the city with gas or other light, and to erect . . . or authorize the erection and maintenance of such works as may be necessary and convenient therefor, and to regulate and control the use thereof."

"And such other powers and privileges not herein specifically enumerated as are incident to municipal corporations of like character and degree not incon-sistent with the constitution and the general laws."

Reliance is also had upon section 7 of Laws 1889-90, p. 224, viz :

" Any city adopting a charter under the provisions of this act shall have all the powers which are now or may hereafter be conferred upon incorporated towns or cities by the laws of this state, and all such powers as are usually exercised by municipal corporations of like character and degree, whether the same shall be specifically enumerated in this act or not."

The two first paragraphs quoted profess to author-ize the enactment of ordinances fixing the price of gas, whether furnished by the city itself or by third persons. But these provisions are without force be-cause they contravene the very statute under which this charter was made.

The legislature of 1890, to open the way for the operation of that portion of the constitution which authorizes cities of a certain population to frame their

own charters, passed what is known as the Enabling Act for cities of the first class.   Laws 1890, p, 215.

Subdivision 14, § 5 (p. 220), is in these words:

"To provide for erecting, purchasing or otherwise acquiring water works within or without the corporate limits of said city, to supply said city and its inhabitants with water, or to authorize the construction of same by others when deemed for the best interests of such city and its inhabitants, *and to regulate and control the use and price of the water so supplied.*"

This paragraph was amplified by the charter makers so as to cover gas works and electric light plants. But the very next subdivision of the statute covered the subject of light.   Subdivision 15 of § 5 is as follows:

"To provide for lighting the streets and all public places, and for furnishing the inhabitants thereof with gas or other lights, and to erect or otherwise acquire and to maintain the same, or to authorize the erection and maintenance of such works as may be necessary and convenient therefor, *and to regulate and control the use thereof.*"

It is worthy of note that the legislature thus, in two paragraphs relating to kindred subjects, expressly conferred the power to fix the price of water, and withheld it as to gas or other light, thus limiting the power over purveyors of gas to "regulation."

Some claim is also made by the city that the power to fix rates was conferred by virtue of certain provisions contained in the constitution, which declared that —

"Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state." See art. 11, § 10.

"Any county, city, town or township may make and enforce within its limits, all such local, police, sanitary and other regulations as are not in conflict with general laws. Article 11, § 11 —

which it is contended are self executing, and that as the legislature has not fixed such rates the ordinance was not in conflict with any general law, and was a valid and legitimate exercise of municipal powers under the constitution. It is sufficient to say, however, that the legislature having passed a general law upon the particular subject, the power to fix such rates must be found therein, if at all.

Being of the opinion that the city had no power to fix the rate and that the case was a proper one for the issuance of an injunction, the action of the court is affirmed.

HOYT, C. J. and ANDERS, DUNBAR and GORDON, JJ., concur.