[No. 13000.   Department Two.   October 18, 1915.]

THE STATE OF WASHINGTON, *on the Relation of F. J. Walker,*
*Plaintiff*, v. THE SUPERIOR COURT FOR SPOKANE
COUNTY *et al., Respondents.*[1]

FRANCHISES — POWER TO GRANT — MUNICIPAL CORPORATIONS.   The
power to grant franchises being a sovereign power residing primarily
in the state legislature, it can be exercised by cities or subordinate
agencies only when the right has been expressly conferred upon them.

MUNICIPAL CORPORATIONS—STREETS—FRANCHISE FOR TELEPHONES—
POWER TO GRANT—REFERENDUM—NECESSITY—STATUTES.   An ordinance
granting a telephone franchise in a city of the first class is subject
to the referendum provision of the city charter requiring all fran-
chise ordinances to be submitted to referendum, notwithstanding
Rem. & Bal. Code, § 9314, relating to telephone companies, which pro-
vides that the streets of the city cannot be used by a telephone com-
pany without the consent of the "city council;" in view of Id.,
§ 7507, subd. 7, giving a first-class city, as a corporate entity as dis-
tinguished from its "legislative authority," power to regulate and
control the use of streets and authorize or prohibit the use of
electricity in or upon the same, and to prescribe the terms and con-
ditions upon which the same may be used; the city charter having
been adopted pursuant to 3 Rem. & Bal. Code, § 7493-1, providing
that the manner and mode in which cities of the first class shall ex-
ercise their powers shall be as provided in their charters, which
may provide for direct legislation by the initiative and referendum.

Certiorari to review a judgment of the superior court for
Spokane county, Sullivan, J., entered August 18, 1915, dis-
missing an action for an injunction, upon sustaining a de-
murrer to the complaint.   Affirmed.

*Allen, Winston & Allen,* for relator.

*H. M. Stephens, Ernest E. Sargeant,* and *Dale D. Drain*
(*J. M. Simpson, Vince A. Day, S. R. Green,* and *John L.*
*Dirks,* of counsel), for respondents.

MAIN, J.—This action was brought by the plaintiff, a
taxpayer of the city of· Spokane, for the purpose of pre-

[1]Reported in 152 Pac. 11.

venting the submission, at an election to be held on November 2, 1915, of the question of the approval or disapproval of an ordinance granting to the Pacific Telephone & Telegraph Company a franchise in such city.

On May 24, 1915, the council of the city of Spokane passed an ordinance granting to the telephone company the right, under certain conditions, to construct, maintain and operate a telephone line along and over certain city streets. On June 7, 1915, the ordinance was amended in particulars which are not here material. The ordinance, among other things, contained the provision that "no acceptance of this ordinance shall create any obligation on the part of the city if there be a referendum petition filed as provided by the charter, unless the ordinance is approved by the people as provided in the charter." On June 26, 1915, the telephone company, in writing, accepted the rights granted to it under the ordinance, together with the conditions imposed by the ordinance. The acceptance contains this provision:

"This acceptance shall not create any obligation on the part of The Pacific Telephone & Telegraph Company if the referendum petition filed with the city clerk protesting against the enactment of said ordinance as amended shall result in the rejection or repeal thereof."

The charter of the city, § 101, is as follows:

"Referendum of Franchises. All franchise ordinances, except as otherwise provided by state law, shall be subject to referendum under the general provisions of this charter."

The cause came before the superior court on a demurrer to the plaintiff's complaint, which was sustained. Thereupon the plaintiff declined to plead further, and a judgment was entered dismissing the action. For the purpose of reviewing this judgment, the cause is brought here by writ of review.

The principal question in the case is whether the franchise ordinance is subject to referendum under § 101 of the charter above quoted. It is claimed by the relator that the

right to grant the franchise is by statute conferred exclusively upon the city council, and that therefore the ordinance is not subject to referendum. It is claimed by the respondents that the right to grant the franchise was conferred upon the city in its corporate capacity, and that the franchise is subject to referendum. Inquiry must, therefore, be directed to the question whether the right to grant a franchise to a telephone company has, by the legislature, been conferred upon the *city council* as distinct from the *city* in its corporate capacity.

The power to grant franchises is a sovereign power and resides primarily in the state legislature. *Dolan v. Puget Sound Traction, Light & Power Co.*, 72 Wash. 343, 130 Pac. 353. The subordinate agencies of the state, such as cities and counties, have not the power to grant franchises unless that right has been expressly conferred by legislative action. *Tacoma Gas & Elec. Light Co. v. Tacoma*, 14 Wash. 288, 44 Pac. 655; *Dolan v. Puget Sound Traction, Light & Power Co., supra.*

In *Benton v. Seattle Elec. Co.*, 50 Wash. 156, 96 Pac. 1033, it was held, construing the statute which granted to the "legislative authority of the city" the power to grant street railway franchises and "prescribe the terms and conditions" upon which such electric railway franchises may be granted, that the legislative authority of the city meant the mayor and city council as distinct from the city as a corporate entity. It was also there held that the act of 1903 as amended in 1907, which conferred upon the legislative authority of the city the power to grant street railway franchises and prescribe their terms and conditions, was not limited by the act of 1903, known as the direct amendment act, and that the charter provision of the city which required an ordinance granting a street railway franchise to be submitted to a vote of the people was void, since the legislature had vested that power in the mayor and city council. In *Ewing v. Seattle*, 55 Wash. 229, 104 Pac. 259, where a street railway

franchise ordinance was under consideration, the doctrine of the *Benton* case was adhered to.

In *Dolan v. Puget Sound Traction, Light & Power Co.*, *supra*, the question was whether the statute passed in 1903 [Laws 1903, p. 364], as amended in 1907 [Laws 1907, p. 192; Rem. & Bal. Code, § 9080], which conferred the power upon the mayor and city council to grant franchises and fix their terms and conditions, was repealed by implication by an act of the legislature passed in 1911 [Laws 1911, p. 54; 3 Rem. & Bal. Code, § 7493-1], which act provided that "the form of the organization and the manner and mode in which cities of the first class shall exercise the powers, functions and duties which are or may be given by law to such cities, with respect to their own government shall be as provided in the charters thereof," and that any such city may provide in its charter for "direct legislation by the people upon any matter within the scope of such powers, functions or duties," by the initiative and referendum. It was there held that this statute did not repeal by implication the previous act of the legislature which conferred the power to grant street railway franchises and fix their terms and conditions, upon the legislative authority of the city, and that the charter provision of the city relative to the referendum of such franchises was not validated. The same distinction is recognized between an act which confers power upon the mayor and city council and one which confers power upon the city in its corporate capacity that was recognized in the *Benton* and *Ewing* cases.

Referring now to the question of telephone franchises, the inquiry must be directed to whether the legislature had conferred the power to grant telephone franchises upon the legislative authority of the city, or upon the city itself as distinct from the mayor and city council. By Rem. & Bal. Code, § 9314 (P. C. 405 § 267), it is provided that (a) the legislature has conferred upon any telephone or telegraph corporation the right to construct and maintain all necessary lines of telegraph or telephone for public traffic along any

public road, street, or highway; (b) that except those roads or highways within the corporate limits of a city, the telephone or telegraph line shall be so constructed as "not to incommode the public use" of the highway; and (c) that as to highways within the corporate limits of any incorporated city, the "consent of the city council thereof" shall be obtained before such telegraph or telephone company has the right to use the streets or highways thereof. This statute is somewhat different in its terms from the statute already referred to which confers power upon the legislative authority of the city to grant street railway franchises. In the latter act, the power is expressly conferred upon the legislative authority of the city to grant such franchises and fix their terms and conditions, while in the act relative to telephone franchises, the legislature confers the right to construct and maintain all necessary telephone lines, upon any telephone or telegraph corporation. The act provides, however, that as to cities the streets thereof may not be used without the consent of the city council. This statute does not expressly confer upon the city council the power to fix the terms and conditions of such franchise as does the street railway franchise act. It may also be noted that, in the telephone act, the right to refuse or consent to the use of the city streets is conferred upon the city council, not upon the mayor and council, nor upon the legislative authority of such city.

By subdivision 7, § 7507, Rem. & Bal. Code, where the powers of a municipal corporation of the first class are defined, it is provided that:

"Any such city shall have power— . . . (7) To lay out, establish, open, alter, widen, extend, grade, pave, plank, establish grades, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds, and to regulate and control the use thereof, and to vacate the same, and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof."

Construing subdivision 7 of § 7507, this court has recently held in *State ex rel. Tacoma v. Sunset Telephone & Telegraph Co.*, 86 Wash. 309, 150 Pac. 427, that, by virtue of this statute, a city of the first class has been given the power, both generally and specifically, in regard to telephone franchises, and that it is by virtue of this statute that the city has the power to impose conditions when such franchises are granted.  It was there said:

"We are not impressed with appellant's contentions (1) that the city had no power to attach conditions to the Webster franchise, and (2) that, even if it had the power to attach conditions, the conditions attached were void.

"The state had previously delegated to cities of the first class, of which relator is one, the general power 'to lay out, establish, . . . streets, alleys . . . and to regulate and control the use thereof, . . . and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof.'  Rem. & Bal. Code, § 7507, subd. 7.

"Though appellant insists that this statutory provision is not a grant of power in regard to telephone franchises, because 'it does not, in express terms, refer to telephone lines, or purport to confer the right to grant telephone franchises,' we do not agree therewith.  The power is both generally and specifically conferred.

"Again, appellant urges that even if the power were conferred by § 7507, *supra*, it was repealed by the subsequent enactment by the same legislature of § 9314, Rem. & Bal. Code (Laws 1890, pp. 292-294; Rem. & Bal. Code, § 9300 *et seq.*), being the general telephone franchise act.  These contentions were certainly decided adversely to appellant's views in *State ex rel. Spokane & B. C. Tel. Co. v. Spokane*, 24 Wash. 53, 63 Pac. 1116, and in *Tacoma R. & Power Co. v. Tacoma*, 79 Wash. 508, 140 Pac. 565.  Notwithstanding appellant's argument to the contrary, in both the cases mentioned, it was distinctly held that the power to regulate and control the use of the streets was conferred by § 7507, subd. 7, *supra*, including the power to attach conditions.  The question is not open to debate.  All of the conditions imposed

were within the city's corporate powers and valid conditions attaching to the franchise."

In the proviso in § 9314, it is said that the highways within the corporate limits of a city cannot be used without the consent of the city council. By the subdivision of § 7507 quoted, the city, in its corporate capacity, is given the powers specified therein. By the decision of this court in the case last cited, it is held, as already noted, that by that statute (§ 7507) the power is both generally and specifically conferred in regard to telephone franchises and right to impose conditions. The power of the city, therefore, with regard to telephone franchises and the right to impose conditions when such franchises are granted flows from a statute which gives that power to the *city*, as distinct from a statute conferring such power upon the legislative authority of the city. Herein lies the distinction between this case and the *Benton*, *Ewing* and *Dolan* cases. Whether, under the proviso in § 9314, which requires the consent of the city council before highways within the city can be used, the city council had the right to impose conditions, we need not here inquire, because it has already been held that the power to impose such conditions is derived from the other section of the statute referred to.

The case of *Southern Bell Telephone & Telegraph Co. v. Richmond*, 103 Fed. 31, is cited in the appellant's brief as supporting his contention. In that case, the state of Virginia passed a law relative to franchises for telephone and telegraph companies which is similar in its terms to § 9314 of the statutes of this state. It contained a provision that the consent of the city council must be obtained for a franchise along or over the streets of any city. There was also a statute in that state which gave to the city of Richmond powers similar to those conferred by subdivision 7 of § 7507 of the statutes of this state upon cities of the first class, and provided that "no company shall occupy with its works the streets of the city without the consent of the city council."

It was there held that, in granting permission to use its streets, the city council had the right to impose conditions. The opinion in that case neither discusses nor recognizes any distinction between a statute which confers the power to grant telephone franchises upon the city council and one which confers such power upon the city as a corporate entity.

Since the power to impose conditions upon a telephone franchise in this state is derived from that section of the statute which gives such power to the city as distinguished from the mayor and city council thereof, it follows that, under the act of the legislature for the year 1911, which conferred upon cities of the first class the power to determine the manner and mode in which such cities shall exercise their powers and functions, the charter provision providing that all franchise ordinances shall be subject to referendum is applicable to the ordinance here under consideration. To hold that a telephone franchise ordinance is not subject to the referendum provision of the city charter in this case, it would be necessary to extend the doctrine of the *Benton*, *Ewing* and *Dolan* cases; and this we think should not be done, as those cases mark the limit of the doctrine of which they are the exponents.

The judgment will be affirmed.

MORRIS, C. J., PARKER, HOLCOMB, and MOUNT, JJ., concur.