[Civil No. 1633.   Filed February 1, 1919.]

[178 Pac. 26.]

YUMA GAS, LIGHT AND WATER COMPANY, Appellant,
v. CITY OF YUMA, THOMAS D. MOLLOY, City At-
torney, and S. FRANK STANLEY, City Recorder,
Appellees.

CONSTITUTIONAL LAW — SELF-EXECUTING PROVISIONS — PUBLIC SERVICE
CORPORATIONS—REGULATIONS.—Constitution, article 13, section 2,
authorizing a city to "frame a charter for its own government, con-
sistent with and subject to the Constitution and laws of the state,"
and article 15, section 3, giving the state Corporation Commission
power to fix rates for public utilities, and providing that incorpo-
rated cities may be authorized to fix such rates within their limits, do
not, in the absence of legislation, confer such power upon a city, and
Yuma City Charter, article 3, section 54, authorizing the fixing of
such rates by ordinance, is void.

APPEAL from a judgment of the Superior Court of the
county of Yuma. Frank Baxter, Judge. Reversed and
remanded, with instructions.

STATEMENT OF FACTS BY THE COURT.

This action was commenced by the appellant as plaintiff to
restrain and enjoin the defendant city and its officers from
enforcing the provisions of an ordinance of the city, known
as "Ordinance No. 150a," for the alleged reason that said
ordinance was enacted without authority of law and is void
because in conflict with the Constitution of the state.   The
demurrers offered presented the questions as follows:

"Is the city of Yuma, by its charter and ordinances, au-
thorized by law, as contemplated by section 3 of article 15
of the state Constitution, to fix and determine the rates or
compensation to be collected by the plaintiff, . . . a public
service corporation doing business within the city of Yuma,
or has the [state Corporation] Commission full and exclu-
sive power to fix and determine such rates?"

The court sustained the demurrer and thereby determined
that the municipality, the city of Yuma, has the power of
fixing the rates and charges of plaintiff company within the
city of Yuma to the exclusion of the Corporation Commis-

sion, and judgment followed accordingly. The plaintiff appeals, and the record consists of an agreed statement of the case.

Mr. G. P. Bullard and Mr. C. A. Lindeman, for Appellant.

Mr. Thomas D. Molloy, for Appellees.

CUNNINGHAM, C. J. (After Stating the Facts as Above). The question for determination is whether the city of Yuma has the power to fix the rates to be charged patrons of a public service corporation by such corporation while doing business in the city. The parties concede that the city of Yuma enacted an Ordinance No. 150a by which the plaintiff corporation was required to charge and collect from the inhabitants of the said city the rates and compensation for services rendered, water and light furnished such inhabitants in the amounts designated in a schedule annexed to said ordinance, and permitted no greater rates to be charged or collected. That said ordinance was enacted under authority of section 54 of article 3 of the special charter of Yuma, as amended, and of section 3 of article 15, state Constitution.

The ordinance in question is clearly one regulating and fixing, until otherwise provided by law, the rates which public service corporations may charge and collect from the inhabitants of the city of Yuma for water, lights, and power, served and used in the city of Yuma. The ordinance is one directly regulating the private business transactions between the public utilities company and its patrons or customers, users of its water, light, and power. Consequently the matter here for inquiry is the source of the power of the municipality to regulate the relations of its inhabitants among themselves with regard to the services of public utilities companies.

The city of Yuma duly adopted a special charter, authorized by section 2 of article 13, state Constitution. Yuma, being a city of the population of 3,500 inhabitants or more, was permitted to ''frame a charter for its own government, consistent with, and subject to, the Constitution and laws of the state. . . . '' Section 2, art. 13, State Constitution. When said charter is framed and has been adopted as specified in said section 2, and approved, the said section declares that ''Upon such approval, said charter shall become the organic

law of such city, and supersede any charter then existing (and all amendments thereto) and all ordinances inconsistent with said new charter.''

The city of Yuma duly adopted, as an amendment to its said special charter, the following provision, known as section 54 of article 3 of the charter:

''Sec. 54.    To fix and determine by ordinance, rates or compensation to be charged and collected by any public utility corporation or person for the use of water, heat, light, power, telephone service, or other public utility supplied to the city or its inhabitants, and to prescribe the quality of service.''

The city depends exclusively upon this section of its special charter as authority for enacting Ordinance No. 150a setting forth a schedule of rates to be charged by appellant company for its service to the inhabitants of Yuma.    In other words, the city of Yuma contends that said section 54 of article 3 of its charter, adopted as required by section 2 of article 13 of the state Constitution, places the city of Yuma within the proviso found in section 3 of article 15 of the state Constitution.    Section 3 of article 15 grants to the Corporation Commission ''full power to . . . prescribe just and reasonable classification to be used, and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state: . . . Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations.''

The authority to adopt a special charter, without any doubt, is legislative in its nature.    The Constitution expressly delegates to the incorporated cities and towns of the state the power so to legislate, and expressly limits the power of such legislation to such matters as pertain to *its own government consistent with and subject to the Constitution and the laws of the state.*    Section 2, art. 13, State Constitution.    Clearly, the matters of regulation of rates collected and charged by public service corporations for services rendered inhabitants of any incorporated city or town are not matters pertaining to the cities' own government, and section 54 of article 3 of

the city charter is clearly inconsistent with section 3 of article 15, State Constitution. The city of Yuma had no authority of law to adopt a charter provision abrogating the powers of the Corporation Commission to fix rates and charges of public service corporations within the state. The legislative power of the state alone could take from the Corporation Commission the duty of fixing rates and give the right to the cities. *State* v. *Tucson Gas etc. Co.*, 15 Ariz. 294, 138 Pac. 781. No pretense is made that the legislative power has attempted to authorize the incorporated cities to exercise the power of supervision over public service corporations. The words of the Constitution stating that a city of 3,500 inhabitants or more "may frame a charter for its own government" mean that it may frame a charter for the government of itself as a city, which includes all that is necessary or incident to the government of a municipality, but not all the power that the state has for the protection of the rights and regulation of the duties of the inhabitants in the city as among themselves. See *State ex rel. Garner* v. *M. & K. Tel. Co.*, 189 Mo. 83, 88 S. W. 41; *Tacoma Gas & El. L. Co.* v. *City*, 14 Wash. 288, 44 Pac. 655; section 63, 1 Dillon, Municipal Corporations, p. 114.

In *State* v. *Tucson Gas etc. Co.*, 15 Ariz. 294, 297, 138 Pac. 781, 782, this court said:

"In the absence of legislation as contemplated by the proviso in section 3 (of article 15, Const.), the 'full power' is a general grant or investiture of plenary power in the [Corporation] Commission to prescribe classifications and fix rates and charges for all public service corporations in the state. By the proviso this full power and jurisdiction of the Corporation Commission to prescribe classifications and fix rates and charges in incorporated cities and towns may be transferred to such municipal corporations, if 'authorized by law'; that is to say, the Legislature may, in one case, exercise its power to restrict or limit the 'full power' and jurisdiction of the commission to prescribe classifications and fix rates and charges of public service corporations, and that case is particularly and definitely pointed out."

This record does not point to a general law enacted by the legislative power of the state taking from the Corporation Commission the power to regulate rates and charges of public service corporations and granting such power to incorporated cities and towns. It does point to an attempt made by the in-

corporated city of Yuma to accept such power prior to its grant.   Clearly, section 54 of article 3 of the Yuma charter, adopted by amendment, is void because in conflict with the Constitution of the state (section 3, article 15).   Ordinance No. 150a is therefore inoperative for any purpose.

The judgment appealed from is reversed and the cause remanded, with instructions to overrule the city's demurrer to the plaintiff's complaint and render judgment for the plaintiff, with such restraining orders as are necessary in the premises to secure the rights of the parties in accordance with law.

ROSS and BAKER, JJ., concur.